IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SIMON NICHOLAS RICHMOND, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:14-cv-4298-K |
| | § | |
| SW CLOSEOUTS, INC., ET AL., | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff Simon Nicholas Richmond ("Plaintiff" or "Richmond") filed a status report and motion for final judgment, as to damages, against Defendants SW Closeouts Inc. ("SWC") and Quang Ho Nhat Nguyen ("Nguyen") (collectively, "Defendants"). *See* Dkt. No. 50. Plaintiff seeks injunctive relief and "actual damages in the amount of $40,000[.00]," which he believes should be enhanced for a total award "in the amount of $120,000.00." *Id.* at 17. He also seeks interest, costs, and attorneys' fees. *See id.* Defendants did not file a response, and the deadline to do so has passed.

United States District Judge Ed Kinkeade referred the motion to the undersigned United States magistrate judge for findings and recommendations. *See* Dkt. No. 51. Plaintiff's motion should be GRANTED in part and DENIED in part for the reasons and to the extent explained below.

**Background**

On December 5, 2014, Richmond brought patent infringement claims against

Defendants SWC and Nguyen – the parties to whom this motion is directed – and John Brewster ("Brewster") and Stealth Wholesale, Inc. ("Stealth").

Brewster and Stealth are no longer parties to this action. Brewster was terminated as a party pursuant to a Stipulation of Dismissal, which provides that "each party [is] to bear its own costs and attorneys' fees." Dkt. No. 36 at 1. And Stealth was terminated as a party after the Court found that "Plaintiff's Complaint did not show that he has a right to relief against Stealth for direct patent infringement," *see* Dkt. Nos. 31 at 4 (Findings, Conclusions, and Recommendation ["FCR"]), & 33 (adopting FCR), and the deadline for Plaintiff to file a motion for leave to file an amended complaint passed, Dkt. No. 39.

SWC and Nguyen (collectively, the "Remaining Defendants") remain parties to the action. Neither has attempted to answer or otherwise respond to this suit, and their deadline to do so has expired under the Federal Rules of Civil Procedure. *See* Dkt. Nos. 9 & 10. The Clerk of the Court has accordingly entered defaults against them. *See* Dkt. Nos. 16 & 17.

Plaintiff subsequently filed motions for default judgment as to liability against the Remaining Defendants, *see* Dkt. Nos. 18 & 19, which the Court granted, Dkt. No. 34. The Court found that Plaintiff successfully pleaded his claims for direct patent infringement and induced infringement against the Remaining Defendants. *See* Dkt. Nos. 31 at 6-7; & 33. As the undersigned explained in the underlying FCR,

> Plaintiff has sufficiently pleaded his direct patent infringement claims against Nguyen and SWC.... Plaintiff's complaint pleads jurisdiction, patent ownership, and requests for relief. Plaintiff also states that

Nguyen and SWC sell import lights ... that infringe on the '094 Patent. Plaintiff further states that he gave Nguyen and SWC notice of their infringement.

Plaintiff has also properly pleaded induced infringement against Nguyen and SWC. Plaintiff states that Nguyen ... specifically intended to encourage [SWC's and Brewster's] respective infringement of the '094 Patent. Plaintiff also alleges that SWC intentionally induced Brewster's infringement of the '094 Patent by providing him with marketing images of the infringing products for his commercial use.

Dkt. No. 31 at 6-7.

The Court subsequently granted Plaintiff authority to conduct limited post-judgment discovery as to damages. *See* Dkt. No. 38. "Thereafter, Plaintiff propounded discovery requests on [the Remaining] Defendants," including Requests for Admissions ("RFAs"). Dkt. No. 50 at 5-6. The Remaining Defendants did not respond to these requests – even after the Court directed them to do so. *See id.* at 6 (citing Dkt. No. 45).

Plaintiff contends that, pursuant to 35 U.S.C. § 284, he is entitled to recover $40,000.00 in actual damages, which he believes should be enhanced for a total of $120,000.00 in damages. Plaintiff also seeks interest, costs, and attorneys' fees.

Plaintiff alleges that the Remaining Defendants have admitted a number of facts that support his request for damages by not responding to his RFAs. These include that:

1. "Mr. Richmond's revenue and potential for further revenue and associated goodwill, was foreclosed by Defendant's infringing product, which also prevented Mr. Richmond from using his patented products to wedge open the door to the retail buyers office to sell ... his other products not covered by the suit," and "Mr. Richmond could reasonably have had additional profits ... that would ... double the profit he would have made on selling the patented solar garden lights..." (Admission Nos. 44-45);

2. "The value of use of the patented invention is relatively high for

Defendant[s] ...” and “... Mr. Richmond would reasonably expect a royalty in the higher end of 25-50% of Defendant's profit margin, and/or a large upfront fee, if the royalty rate was lower.” (Admission Nos. 47-48);

 3. “Plaintiff is entitled to an award of actual damages of no less than a reasonable royalty from Defendants ... in the amount of $40,000[.00], pursuant to 35 U.S.C. § 284,” “[t]hat the present case is exceptional, ... and that Plaintiff is [therefore] entitled to an award three times the amount of actual damages of no less than $40,000[.00], for a total damages under 35 U.S.C. § 284 of no less than $120,000.00, exclusive of interest and costs.” (Admission Nos. 50-51, 53);

 4. “Defendant[s'] infringement was willful, justifying an award of reasonable attorney's fees to Plaintiff under § 285.” (Admission No. 52);

 5. “The present case is exceptional, justifying an award of reasonable attorney's fees to Plaintiff pursuant to 35 U.S.C. § 285. ... Plaintiff has actually incurred, and is justly entitled to recover from Defendant, reasonable attorney's fees in the amount of no less than $4,200.00,” ... “court costs, including filing fees” and ... “reasonable costs ... for service of process expenses.” (Admissions Nos. 55-58).

 6. “Plaintiff is justly entitled to recover from Defendant[s] prejudgment interest ... at an interest rate of 6.5%, from June 24, 2014.” (Admission No. 59).

Dkt. No. 50 at 13-14.

Plaintiff also filed a declaration from attorney Theodore F. Shiells, which identifies the costs and attorneys' fees incurred in this action. It is accompanied by an exhibit that provides an overview of the work each member of Plaintiff's legal team performed in this action (the declaration and the exhibit hereinafter the “Shiells Declaration”). The Shiells Declaration does not identify the date each member of Plaintiff's legal team performed any given task.

“The case law is clear that judgment by default may not be entered without a hearing unless the amount claimed is a liquidated sum or one capable of mathematical

calculation." *United Artists Corp. v. Freeman,* 605 F.2d 854, 857 (5th Cir. 1979). An evidentiary hearing is thus required where Plaintiff asks for damages that require the Court to exercise discretion. *See id.* (finding that a statute that allows the court to award damages for copyright infringement based on what it considers just "certainly was not liquidated or capable of mathematical calculation").

The Court must exercise discretion here. Plaintiff's motion specifically requires determinations about: (i) whether Plaintiff has established that his request of no less than $40,000.00 constitutes a "reasonable royalty" for the Remaining Defendants' use of his patents, any profits he may have lost as a result, or both; (ii) whether he is entitled to enhanced damages "up to three times" the amount assessed given the facts of this case, and (iii) whether he is entitled to attorneys' fees because this case is "exceptional." *See* 35 U.S.C. § 284-85.

The Court accordingly held an evidentiary hearing on December 13, 2016, at which Plaintiff was given an opportunity to identify the evidence supporting his claim for damages. Plaintiff did not present any additional evidence to support his request for $40,000.00 in actual damages or the $120,000.00 in total he seeks if awarded enhanced damages. He, instead, continued to direct the Court to the facts that Plaintiff admitted to by not responding to the RFAs.

But Plaintiff did provide the Court with a detailed invoice that provides additional support for his claim for attorneys' fees (the "Detailed Invoice"). The Detailed Invoice identifies the tasks performed to litigate this action on any given date, the legal team member who performed those tasks, and the corresponding number of

hours billed and fees accumulated.

At the evidentiary hearing, Plaintiff also provided evidence that he had accrued certain court costs and attorneys' fees since he filed the instant motion. This includes 4.0 hours of attorneys' fees that his counsel's paralegal billed at $100 per hour, and $170.00 in costs for serving the Order scheduling the evidentiary hearing on the Remaining Defendants. The undersigned does not advise the Court about whether to award Plaintiff these costs and fees, at least on this motion. Plaintiff's motion (necessarily) seeks only the $33,649.00 in attorneys' fees and $600.00 costs that (he contends) had accrued as of the date this motion was filed. *See* Dkt. No. 50 at 5.   And the undersigned is only asked to advise the Court about how to rule with respect to the instant motion. *See In re Idearc, Inc.*, No. 09-31828-BJH-11, 2011 WL 203859, at *11 (Bankr. N.D. Tex. Jan. 21, 2011) ("The Court declines to offer an opinion as to how it may or may not rule with respect to those as-yet-unfiled motions. Rather, the Court will rule only upon the motion before it.").

## Legal Standards

A plaintiff must present evidence supporting each of his theories of recovery. This is true even when the plaintiff has secured a default judgment. "A default judgment is a judgment on the merits that conclusively establishes the defendant's liability. But it does not establish the amount of damages. After a default judgment, the plaintiff's well-pleaded factual allegations are taken as true, except regarding damages." *U.S. for Use of M-CO Constr., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987) (internal citations omitted).

-6-

The United States Court of Appeals for the Fifth Circuit reasons that "[t]he default judgment establishes the truth of … [the] factual allegations" minimally necessary to support the defendant's liability. *See id.* "But the fact that [a defendant] breached does *not* establish" any other unnecessary facts – such as those that only speak to the damage that the plaintiff may have suffered. *See id.* (noting that "the fact that Shipco breached does *not* establish that M-CO did good quality work, as required by the contract" (emphasis in original)).

## Analysis

Plaintiff contends that he is entitled to injunctive relief and "actual damages in the amount of $40,000[.00]," which he believes should be enhanced for a total of $120.000.00 in damages. He also seeks interest, costs, and attorneys' fees. The undersigned considers each of Plaintiff's requests below.

I.    The Court has already granted Plaintiff's request for injunctive relief.

As an initial matter, Plaintiff's request for a "permanent injunction against [the Remaining] Defendants refraining them from importing, offering to sell, and/or selling solar garden lighting products that infringe Richmond's '094 patent" is moot. Dkt. No. 50 at 13 (emphasis removed). The undersigned previously recommended that "the Court should grant Plaintiff's motions for partial default judgment on liability and injunctive relief on his claims against Nguyen and SWC." Dkt. No. 31 at 7. The Court subsequently accepted the undersigned's recommendation "as the Findings, Conclusions, and Recommendation of the Court." *See* Dkt. No. 33.

II.    The Court should deny Plaintiff's request for actual damages either in the form

<u>of a reasonable royalty, lost profits, or both</u>.

35 U.S.C. § 284 provides that, "[u]pon finding for the claimant, the court shall award claimant damages adequate to compensate for the infringement." This amount shall "in no event be less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." 35 U.S.C. § 284. Section 284 further explains that the Court "may receive expert testimony as an aid to the determination of damages or of what royalty would be reasonable under the circumstances." *Id*. The claimant may also be entitled to any lost profits that he is reasonably likely to have suffered to the extent that they are necessary to make him whole. *See Del Mar Avionics, Inc. v. Quinton Instrument Co.*, 836 F.2d 1320, 1326-28 (Fed. Cir. 1987) ("[I]n order to recover lost profits a patentee must show a reasonable probability that, but for the infringement, it would have made the sales that were made by the infringer.").

Plaintiff appears to argue that he is entitled to an award of actual damages in the amount of $40,000.00 either in the form of a "reasonable royalty," lost profits, or both. Dkt. No. 50 at 5.

The fact that the Remaining Defendants were found to infringe Plaintiff's patent does not establish the extent to which they improperly made use of Patent's patent or the extent to which Plaintiff suffered lost profits due to that use. Plaintiff is thus required to present evidence supporting his request for $40,000.00 in actual damages.

Plaintiff does not proffer expert testimony to support his request as Section 284 contemplates. Instead, Plaintiff relies exclusively on facts that he asserts that the

Remaining Defendants admitted when they failed to respond to Plaintiff's RFAs. Plaintiff observes that Federal Rule of Civil Procedure 36(a) provides that, unless a party timely denies a request for admission, the matter is deemed admitted. *See* FED. R. CIV. P. 36(a) ("A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection....").

Plaintiff's reliance on unanswered RFAs alone is not sufficient. Courts refuse to allow parties to exclusively rely on "requests for admission submitted after entry of default" to establish damages out of concerns that it would "defeat the purpose of [Federal Rule of Civil Procedure] 55(b)." *LG Electronics, Inc. v. Advance Creative Computer Corp.*, 212 F. Supp. 2d 1171, 1178 (N.D. Cal. 2002); *accord Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003) (explaining that "[a] court has an obligation to assure that there is a legitimate basis for any damage award it enters, and to assure that damages are not awarded solely as the result of an unrepresented defendant's failure to respond to a Request for Admission that may allege a completely unreasonable or speculative amount of damages with no factual basis").

These courts reason that "[w]here default judgment is entered based on a party's failure to appear and litigate in its defense, that party's complete failure to respond to court process and defend necessarily includes the lesser offense of failure to answer discovery." *LG Electronics*, 212 F. Supp. 2d at 1178. "To translate that default on discovery into automatic proof of damages for purposes of a motion for default judgment is a form of bootstrapping that would defeat the purpose of Rule 55(b)'s

provision for a court hearing on the damages sought in a motion for default judgment."

*Id.*

Rule 55(b) provides that:

[i]f, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary....

FED. R. CIV. P. 55(b). "The evident policy of the rule is that even a defaulting party is entitled to have its opponent produce some evidence to support an award of damages." *LG Electronics*, 212 F. Supp. 2d at 1178.

Plaintiff cannot circumvent this responsibility by issuing RFAs on parties who have never appeared in this action and who almost certainly would not suddenly appear in the action to respond.

The unanswered RFAs do not adequately support Plaintiff's request for actual damages even if the Court could consider them. Plaintiff primarily relies on the Remaining Defendants' alleged admission that

Plaintiff is entitled to an award of actual damages of no less than a reasonable royalty from Defendant for the use made of the invention by the Defendant, in the amount of $40,000, pursuant to 35 U.S.C. § 284....

Dkt. No. 50 at 10 (quoting RFA Nos. 50-51, 53). But whether Plaintiff is entitled to $40,000.00 in damages under 35 U.S.C. § 284 is a legal question for the Court to decide. Plaintiff cannot sidestep or bypass that legal determination through the use of RFAs. Although "Rule 36 allows litigants to request admissions as to a broad range of matters," *In re Carney*, 258 F.3d 415, 419 (5th Cir. 2001), "'[r]equests for admissions

cannot be used to compel an admission of a conclusion of law,'" *see id.* (quoting *Playboy Enterprises, Inc. v. Welles*, 60 F. Supp. 2d 1050, 1057 (S.D. Cal. 1999)).

The other RFAs on which Plaintiff relies likewise do not establish facts supporting his request for $40,000.00 in actual damages. One set of RFAs asserts that "... Richmond would reasonably expect a royalty in the higher end of 25%-50% of Defendant's profit margin, and/or a large upfront fee, if the royalty rate was lower." Dkt. No. 50 at 14 (quoting RFA Nos. 47-48). But Plaintiff does not cite to RFAs that establish that $40,000.00 is equal to either 25%-50% of Defendant's profit margin or the large upfront fee to which these admissions refer.

Another set of RFAs asserts that "... Richmond could reasonably have had additional profits ... that would, conservatively ... double the profit he would have made on selling the patented solar garden lights alone." Dkt. No. 50 at 13 (quoting RFA Nos. 44-45). But, here too, Plaintiff fails to cite to RFAs that establish that $40,000.00 is "double the profit [that Richmond]" makes by selling the patented solar garden lights. It is also unclear whether the Remaining Defendants could have answered this set of RFAs in the first place. Defendant would have had to know information about Plaintiff's profits – a fact of which only Plaintiff may be aware. *See J. R. Prewitt & Sons, Inc. v. Willimon*, 20 F.R.D. 149, 151 (W.D. Mo. 1957) ("A party should not be required to admit the truth of facts which are exclusively within the knowledge of the party serving the request.").

Plaintiff presents no other evidence explaining precisely why he is entitled to $40,000.00 or any amount in actual damages. The Court should therefore find that

Plaintiff is not entitled to any actual damages.

III.   The Court should find Plaintiff's request for interest is moot.

"[P]rejudgment interest may be based only on the compensatory portion of the damages award ... and not on the enhanced additional damages." *Beatrice Foods Co. v. New England Printing & Lithographing Co.*, 923 F.2d 1576, 1580-81 (Fed. Cir. 1991). Plaintiff has failed to establish he is entitled to any actual damages. As such, the Court should find that Plaintiff's request for interest is moot.

IV.   The Court should deny Plaintiff's request for enhanced damages.

Plaintiff asks the Court to exercise its discretion under 35 U.S.C. § 284 to award him enhanced damages. Section 284 provides that "the court may increase the damages up to the amount found or assessed" in actual damages. 35 U.S.C. § 284. The United States Supreme Court has directed that, in applying its discretion, a district court is to "take into account the particular circumstances of each case in whether to award damages, and in what amount." *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 136 S. Ct. 1923, 1933 (2016). An award of enhanced damages is "generally to be reserved for egregious cases typified by willful misconduct." *Id.* at 1934. "Yet none of this is to say that enhanced damages must follow a finding of egregious conduct." *Id.* at 1933. Prevailing parties must establish their entitlement to enhanced damages by a preponderance of the evidence. *See id.* at 1934.

Plaintiff appears to argue that he is entitled to enhanced damages because the Remaining Defendants have admitted, by virtue of the unanswered RFAs, that their

"infringement was willful, justifying an award of reasonable attorney's fees." Dkt. No. 50 at 10. Plaintiff specifically states that the Remaining Defendants "continued to sell infringing products," "with knowledge of Richmond's '094 patent and of their infringement." *Id.* at 11.

The Court should not grant Plaintiff's request for three reasons.

First, Plaintiff's request is moot. Section 284 only allows courts to increase the amount that Plaintiff would otherwise be entitled to "up to three times the amount found or assessed" in actual damages. Plaintiff has not established that he is entitled to any actual damages. Increasing the amount of damages Plaintiff is entitled to in actual damages ($0.00) by "up to three times" (still $0.00) would not add to his recovery on these claims. *See also Beatrice Foods*, 923 F.2d at 1579 ("Damages cannot be enhanced to award the patentee additional compensation to rectify what the district court views as an inadequacy in the actual damages awarded.").

Second, Plaintiff has failed to establish that Defendant "willfully" infringed on Plaintiff's patent or that the case is otherwise uniquely egregious. Plaintiff appears to exclusively rely on the Remaining Defendants' admission that "[t]he present case is exceptional, justifying the court increasing the damages awarded to Plaintiff by three times. " Dkt. No. 50 at 14 (quoting Admission Nos. 50-51, 53). But, as stated, the prevailing party cannot exclusively rely on unanswered RFAs to establish the facts supporting a request for damages on default. Further, whether the facts of this case entitle Plaintiff to enhanced damages is a determination for the Court that Richmond cannot sidestep through an RFA. *See In re Carney*, 258 F.3d at 419 ("'[r]equests for

admissions cannot be used to compel an admission of a conclusion of law'" (quoting *Playboy Enterprises*, 60 F. Supp. at 1057)).

There is no other evidence before the Court suggesting that the Remaining Defendants have engaged in willful conduct or other conduct that make this case so egregious as to warrant an award of enhanced damages. Plaintiff has prevailed in this case on default. A "default judgment establishes the truth of … the factual allegations" minimally necessary to support the judgment against the defendants. *U.S. for Use of M-CO Constr., Inc.*, 814 F.2d at 1014.

The Court must therefore assume that the Remaining Defendants infringed Plaintiff's patent and that they induced a third party to infringe on the patent. The default does not require the Court to conclude that the Remaining Defendants acted "willfully" in so doing or under egregious circumstances.

This is because "[t]he scienter required for willful infringement is different from that required for induced infringement," *Dorman Products, Inc. v. Paccar, Inc.*, __ F. Supp. 3d __, Civ. A. No. 13-6383, 2016 WL 4440322, at *9 (E.D. Pa. Aug. 23, 2016) (citing *Bnutti Skeletal Innovations, LLC v. Globus Medical, Inc.* Civ. A. No. 14-6650, 2015 WL 3755223, at *11-*12 (E.D. Pa. June 15, 2015)), and direct infringement.

The Supreme Court has explained that courts are to only award enhanced damages as a "punitive" or "vindictive" sanction. *Halo*, 136 S.Ct. at 1932. These damages are to be reserved for egregious cases, typified by "willful" conduct indicating that the infringing party acted in bad faith. *See id.* (explaining that "[t]he sort of

conduct warranting enhanced damages has been variously described in our cases as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or – indeed – characteristic of a pirate"). In short, a finding that an infringer has acted "willfully" requires "more than simple awareness of the patent and awareness of infringement." *Dorman*, 2016 WL 4440322, at *9.

The Court does not need to assume that the Remaining Defendants necessarily acted in bad faith simply because the Court found that they induced a third party to infringe on Plaintiff's patent. *See OPTi Inc. v. VIA Techs., Inc.*, Civ. A. No. 2:10-cv-279-JRG, 2015 WL 417193, at *1 (E.D. Tex. Jan. 30, 2015) (observing that the Court entered Final Judgment finding that VIA infringed on the patent, "induced infringement of the same claim," but that "VIA's infringement was not willful"); *Yoon Ja Kim v. ConAgra Foods, Inc.*, 465 F.3d 1312, 1317 (Fed. Cir. 2006) (noting that the jury had found that "ConAgra had induced infringement of claim 10 ... but that the inducement was not willful"). "The scienter required for induced infringement is knowledge of the existence of the patent and knowledge 'that the induced acts constitute patent infringement.'" *Dorman*, 2016 WL 4440322, at *8 (quoting *Commill USA, LLC v. Cisco*, 135 S.Ct. 1920, 1928 (2015)). As the Supreme Court has recently explained, this means that "an infringer [does] not escape liability for induced infringement ... [where] the infringer knew infringement was occurring but believed it was not liable due to the affirmative defense of invalidity." *Dorman*, 2016 WL 4440322, at *8 (referring to the Supreme Court's decision in *Commill USA*, 135 S.Ct.

at 1928).

The same is true with respect to direct infringement claims. As further explained below, in finding that the Remaining Defendants infringed on Plaintiff's patent, the Court only needed to accept Plaintiff's allegations that the Remaining Defendants infringed on his patent and that Plaintiff notified them of his belief that they had done so. *See* Dkt. No. 31 at 4 (explaining the pleading requirements for a direct infringement claim) (citing *In re Bill of Lading Transmission and Processing Sys. Patent Litig.*, 681 F.3d 1323, 1334 (Fed. Cir. 2012)). But the Remaining Defendants may have subjectively believed that they had not infringed on Plaintiff's patent, irrespective of Plaintiff's belief otherwise.

Finally, the Court is not in a position to conclude that the facts of this case are especially "egregious" where the Court can only assume that the Remaining Defendants are liable based on the few facts that it necessarily must accept to support liability.

The Court should thus deny Plaintiff's request for enhanced damages.

V.   <u>But the Court should grant Plaintiff's request for costs.</u>

Section 284 provides that a claimant is entitled to costs as fixed by the court upon a finding in his or her favor. *See* 35 U.S.C. § 284.

Unlike his request for actual damages, Plaintiff does not entirely rely on the unanswered RFAs to establish that he is entitled to costs in light of the default judgments. Plaintiff, instead, supplements this request with the Shiells Declaration. The Shiells Declaration explains that Plaintiff "incurred costs in the amount of $350.00

for filing this action," Dkt. No. 50, Ex. 1 at ¶ 5, and "250.00 as fees for service of the Complaint and Summons and Plaintiff's limited discovery requests." *id.* at ¶ 6. This is sufficient since Shiells is Plaintiff's counsel and would have personal knowledge of the court costs relating to this action.

The Court should thus award Plaintiff the $600.00 ($350.00 + $250.00) in costs that he seeks on this motion. Dkt. No. 50 at 5.

VI.   <u>The Court should also grant Plaintiff's request for attorneys' fees.</u>

Section 285 of Chapter 35 of the United States Code provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285.

The United States Supreme Court has recently "expanded the standard under which a lawsuit presents an 'exceptional case' meriting the award of attorney fees." *Baker v. DeShong*, 821 F.3d 620, 621-22 (5th Cir. 2016) (referring to the Supreme Court's decision in *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014)). The United States Court of Appeals for the Federal Circuit had previously defined an "exceptional" case as one where "there has been some material inappropriate conduct related to the matter in litigation, such as willful infringement, fraud or inequitable conduct in procuring the patent, misconduct during litigation, vexatious or unjustified litigation that violates FED. R. CIV. P. 11, or like infractions." *Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378, 1381 (Fed. Cir. 2005), abrogated by *Octane Fitness*, 134 S. Ct. 1749. The Supreme Court found the Federal Circuit's definition of "exceptional" to be overly narrow. It noted that, as defined, a

prevailing party could only recover damages under Section 285 where he or she established, by clear and convincing evidence, that the losing party had engaged in "independently sanctionable conduct" or the prevailing party brought litigation that was "objectively baseless" and "in subjective bad faith." *Octane Fitness*, 134 S. Ct. at 1756-57.

"Finding this framework inconsistent with the text of § 285, the [Supreme] Court embraced an expansive reading of the word 'exceptional.'" *Baker*, 821 F.3d at 622 (citing *Octane Fitness*, 134 S. Ct. at 1756). It concluded that, according to its ordinary meaning, an "exceptional" case is "simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case)." *Octane Fitness*, 134 S. Ct. at 1756. There "'is no precise formula for making [this] determination[].'" *Id.* at 1756 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994)). "District courts [are to] determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Octane Fitness*, 134 S. Ct. at 1756.

The Supreme Court also rejected the "requirement that patent litigants establish their entitlement to fees under § 285 by 'clear and convincing evidence.'" *Id.* at 1756 (quoting *Brooks Furniture*, 393 F.3d at 1381). It noted that, "indeed, patent-infringement has always been governed by a preponderance of the evidence standard." *Id.* at 1758.

    A.    The evidence establishes that the Remaining Defendants were reluctant to engage with Plaintiffs concerning his claims and that they are liable.

Plaintiff contends that he is entitled to attorneys' fees "[g]iven Defendants' reluctance to engage with Richmond and failure to appear." Plaintiff also appears to argue that this case is exceptional because "'Defendant[s'] infringement was willful.'" Dkt. No. at 50 at 14 (quoting RFA No. 52). He specifically alleges that the Remaining Defendants knew that they infringed on Plaintiff's patent but nevertheless "'continued to offer to sell infringing products.'" *Id.* at 15 (quoting RFA Nos. 22-24).

Plaintiff, again, appears to entirely rely on the unanswered RFAs to support this contention. For the reasons explained above, the undersigned does not consider the RFAs because Plaintiff seeks damages following default judgment.

The undersigned, instead, relies on the minimal facts the Court necessarily had to accept as true to grant Plaintiff's default judgment on his direct infringement and induced infringement claims.

These facts only establish the truth of Plaintiff's first contention: that the Remaining Defendants were reluctant to engage Plaintiff concerning these claims before and during the litigation. There are two pieces of evidence supporting this contention.

The defaults against the Remaining Defendants are the first piece of evidence. In the defaults, the Clerk of the Court concluded that "service of the complaint has been made, that the [Remaining] Defendant[s] ha[ve] failed to answer or otherwise defend as directed within the time allowed, and that ... Plaintiff has shown that failure through affidavit or otherwise." Dkt. Nos. 16 & 17.

The facts supporting Plaintiff's default on his direct infringement claim

constitute the second piece of supporting evidence. By granting Plaintiff's default judgment on this claim, the Court was required to find that Plaintiff complied with the requirements of Former Form 18 of the Federal Rules of Civil Procedure. *See* Dkt. No. 31 at 4 (citing *In re Bill of Lading Transmission and Processing Sys. Patent Litig.*, 681 F.3d 1323, 1334 (Fed. Cir. 2012)). Although Form 18 has since been eliminated from the Federal Rules, it nevertheless applies to this case because Form 18 was still in effect when the complaint was filed. *See Bluestone Innovations LLC v. Bulbrite Industries, Inc.*, No. 15-cv-5478-PJH, 2016 WL 1535059, at *3 (N.D. Cal. Apr. 15, 2016) (applying Form 18 because, "[a]t the time that Bluestone filed the complaint, Form 18 was still operative and controlling); *Lyda v. CBS Corp.*, 838 F.3d 1331, 1337 n.2 (Fed. Cir. 2016) (suggesting that Form 18 applies at least where "the Amended Complaint was filed in 2014, and the case was terminated when the complaint was dismissed in July 2015"). *But see Windy City Innovations, LLC v. Microsoft Corp.*, No. 16-CV-1729-YGR, 2016 WL 3361858, at *4 (N.D. Cal. June 17, 2016) (noting that "[s]ome courts have found that the change applies retroactively to cases filed before the Form 18 pleading standard was abrogated"). Form 18 requires a plaintiff to provide notice to the defendant of his or her potential infringement. *See In re Bill of Lading*, 681 F.3d at 1334. As a result, the undersigned concludes that the Remaining Defendants elected not to engage Plaintiff with respect to his claims even though they had notice of the claims before the litigation even started.

But, as previously explained, the default judgments do not establish that the

Remaining Defendants "willfully" infringed on the Plaintiff's patent since neither requires the Court to conclude that the Remaining Defendants acted in bad faith.

    B.    This case is "exceptional" in light of the Remaining Defendants' refusal <u>to cooperate with Plaintiff before and during the litigation</u>.

Plaintiff's request for attorneys' fees thus turns on one question: Is this case "exceptional" based on the Remaining Defendants' reluctance to engage in the litigation and the facts establishing liability against them?

The undersigned believes so. A number of courts have indicated that "a case may be deemed 'exceptional,' and merit an award of attorney[s'] fees ... when Defendant disregards the proceedings and does not appear." *Phillip Morris USA, Inc. v. Castworld Products, Inc.*, 219 F.R.D. 494, 502 (C.D. Cal. 2003) (citing *Taylor Made Golf Co., Inc. v. Carsten Sports Ltd.*, 175 F.R.D. 658 (S.D. Cal. 1997) (quoting *Lien v. Compusoft of Kalamazoo, Inc.*, No. 1:89CV-104, 1991 WL 641575, at *5 (W.D. Mich. 1991))); *see also Chevron Intellectual Property, L.L.C. v. Allen*, No. 7:08-cv-98-O, 2009 WL 2596610, at*4 (N.D. Tex. 2009) (citing *Phillip Morris*, 219 F.R.D. at 502, for the proposition that "[a]dditionally, an award of reasonable attorney[s'] fees is appropriate due to the fact that Defendant has completely disregarded this litigation").

Although these Courts discussed a prevailing party's right to attorneys' fees under 15 U.S.C. § 1117(a), Section 1117(a) is considered a "statutory equivalent" to Section 285 – the statute that Plaintiff invokes in his request for attorneys' fees. *See Baker*, 821 F.3d at 624 ("Because § 285 and § 1117(a) are clear 'statutory equivalents,' we read their nearly identical language to reflect the fact that the [Supreme] Court

'think[s] it clear that Congress intended the same language to have the same meaning in both statutes.'" (citing *Commc'ns Workers of Am. v. Beck*, 487 U.S. 735, 745-47 (1988))). These courts reason that, by being "completely uncooperative" in a plaintiff's efforts to protect the interest he or she has in the patents at issue, defendants have "essentially invited the initiation of this action." *Lien*, 1991 WL 641575, at *5.

The undersigned further observes that defaulting parties also ensure that there is no chance the parties will settle the case. "Such lack of cooperation and disrespect for the judicial process constitute exceptional circumstances warranting an award of attorney fees to plaintiff in this action." *Id.*

These cases are especially persuasive because they were decided before the Supreme Court clarified that the Federal Circuit's interpretation of "exceptional" was overly narrow.

The undersigned thus concludes that this case is "exceptional" and that the Court should grant Plaintiff attorneys' fees in this action.

C.     The Court should award Plaintiff $31,300.50 in attorneys' fees.

"[T]he awarding of attorney fees pursuant to 35 U.S.C. § 285 is unique to patent law and therefore subject to Federal Circuit law." *Special Devices, Inc. v. OEA, Inc.*, 269 F.3d 1340, 1343 (Fed. Cir. 2001). The Federal Circuit has "approv[ed] of use of the lodestar method in calculating an award of § 285 attorney[s'] fees." *Innovention Toys, LLC v. MGA Entertainment, Inc.*, Civ. A. No. 07-6510, 2014 WL 1276346, at *2 (E.D. La. March 27, 2014) (citing *Mathis v. Spears*, 857 F.2d 749, 755 (Fed. Cir. 1988) (citing

*Hensley v. Eckerhart*, 461 U.S. 424 (1982)). The undersigned will therefore apply the lodestar method.

Under the lodestar method, the lodestar is calculated by multiplying the number of hours an attorney reasonably spent on the case by an appropriate hourly rate, which is the market rate in the community for this work. *See Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 490 (5th Cir. 2012). "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988) (citing *Blum v. Stenson*, 465 U.S. 886, 895-96 n. 11 (1984)). The relevant legal community is the community in which the district court sits. *See Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002).

The party seeking reimbursement of attorneys' fees bears the burden of establishing the number of hours expended through the presentation of adequately recorded time records as evidence. *See Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). The Court should use this time as a benchmark and then exclude any time that is excessive, duplicative, unnecessary, or inadequately documented. *See id*. The hours remaining are those reasonably expended. *See id*. There is a strong presumption of the reasonableness of the lodestar amount. *See Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010); *Saizan v. Delta Concrete Prod. Co.*, 448 F.3d 795, 800 (5th Cir. 2006).

After calculating the lodestar, the Court may either (1) accept the lodestar figure

or (2) decrease or enhance it based on the circumstances of the case, taking into account what are referred to as the *Johnson* factors. *See La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324, 329 (5th Cir. 1995); *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *overruled on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 90 (1989). The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the legal issues; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney as a result of taking the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or other circumstances; (8) the monetary amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) whether the case is undesirable; (11) the nature and duration of the professional relationship with the client; and (12) awards in similar cases. *See Johnson*, 448 F.2d at 717-19; *see also Saizan*, 448 F.3d at 800. Because the lodestar is presumed to be reasonable, it should be modified only in exceptional cases. *See Watkins*, 7 F.3d at 457. Further, the lodestar amount may not be adjusted due to a *Johnson* factor that was already taken into account during the initial calculation of the lodestar, *see Saizan*, 448 F.3d at 800, and the lodestar calculation may take into account several *Johnson* factors, *see Black v. SettlePou, P.C.*, 732 F.3d 492, 503 n.8 (5th Cir. 2013).

The Court recognizes that the analysis set forth above, and particularly the interplay of the lodestar analysis and the *Johnson* factors, may have called into

question. *See Perdue*, 559 U.S. at 552-53; *S&H Indus., Inc. v. Selander*, No. 3:11-cv-2988-M-BH, 2013 WL 6332993, at *2-*3 (N.D. Tex. Dec. 5, 2013).

But the Fifth Circuit, in a recent published opinion, has rejected the argument "that *Perdue* clearly disfavors applying the *Johnson* factors to determine a fee award and instead requires the use of only the lodestar." *Combs v. City of Huntington, Tex.*, 829 F.3d 388, 393 (5th Cir. July 15, 2016). The Court of Appeals explained that

> [w]e agree that *Perdue* requires courts to first calculate the lodestar; indeed, this has long been our practice. *See, e.g., League of United Latin Am. Citizens No. 4552 (LULAC) v. Roscoe Ind. Sch. Dist.*, 119 F.3d 1228, 1232 (5th Cir. 1997) ("The method by which the district court calculates an attorneys' fees award is well established. The district court first calculates the 'lodestar.' "). But *Perdue* does not, as Combs contends, make it impermissible to then consider any relevant *Johnson* factors. *Perdue* cautions against the sole use of the *Johnson* factors to calculate a reasonable attorney's fee but nowhere calls into question the use of relevant *Johnson* factors to make this determination. Indeed, *Perdue* expressly allows adjustments "in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." 559 U.S. at 554, 130 S. Ct. 1662.
> ....
> And though the lodestar is presumed reasonable, it may be adjusted where it "does not adequately take into account a factor that may be properly considered in determining a reasonable fee." *Perdue*, 559 U.S. at 554, 130 S. Ct. 1662. .... *Perdue*, consistent with the Court's frequent pronouncements, explains that lodestar enhancements are to be rare. ....
> In sum, the district court should begin by calculating the lodestar: the reasonable hours expended multiplied by a reasonable rate. The district court may then determine whether any other considerations counsel in favor of enhancing or decreasing the lodestar. In light of the "strong presumption" that the lodestar represents a sufficient fee, enhancements must necessarily be rare. *Perdue*, 559 U.S. at 553-54, 130 S. Ct. 1662.

*Id.* at *4-*5; *accord Biery v. United States*, No. 07-675L, 2012 WL 5914260, at *7 (Fed.

Cl. Nov. 27, 2012); *Bywaters v. United States*, 670 F.3d 1221, 1230 (Fed. Cir. 2012).

*Perdue*, then, did not change the landscape of calculating attorneys' fees awards. Accordingly, the analysis below will take into account the necessary factors when determining the appropriate amount of attorneys' fees to be awarded under Section 245.

Plaintiff requests attorneys' fees for the time that his legal team spent preparing "the Complaint, Request to the Clerk for Entry of Default, Motion for Partial Default Judgment as to liability and injunctive relief, Discovery Requests Related to Damages, Status report regarding discovery, and all accompanying documents, filing declarations, and affidavits." Dkt. No. 50 at 16-17. Plaintiff indicated to the Court at the evidentiary hearing that, with the exception of the Complaint, his request only accounts for the hours spent litigating this action against the Remaining Defendants.

It is not immediately apparent how many hours Plaintiff's legal team spent litigating this action against the Remaining Defendants due to the discrepancies between the evidence on which Plaintiff relies to establish damages. Plaintiff specifically relies on the Shiells Declaration, which appears to account for Plaintiff's attorneys' fees as of September 26, 2016, and the Detailed Invoice, which appears to account for Plaintiff's attorneys' fees as of December 12, 2016.

In the Shiells Declaration, Shiells avers that his team collectively spent 195.7 hours litigating this action against the Remaining Defendants and that Plaintiff is therefore entitled to $33,649.00 in attorneys' fees. But the Detailed Invoice reflects that Plaintiff's legal team collectively spent 225.3 hours litigating this action against the

Remaining Defendants and suggests that Plaintiff is entitled to $38,718.00 in fees. The Detailed Invoice was prepared a few months after the Shiells Declaration, but the 4.2 hours that paralegal Sohail Chaudry billed at $100.00/hour after the Shiells Declaration was prepared does not fully account for this discrepancy. Neither does the fact that the Detailed Invoice includes 2.1 hours that Shiells billed for work that is only relevant to Plaintiff's claims against defendants who are not the subject of the instant motion – work that Plaintiff is not entitled to recover from the Remaining Defendants. *See Bank One, Texas, N.A. v. Taylor*, 35 (5th Cir. 1992) ("Ordinarily, where a case involves more than one claim, attorney's fees can be awarded only for necessary legal expenses incurred in connection with the claims for which recovery is authorized.") (citing *Ralston Oil and Gas Co. v. Gensco, Inc.*, 706 F.2d 685, 697 (5th Cir 1983)). This includes an April 29, 2015 entry in which Shiells bills 0.5 hours for "calls and emails with John Brewster's attorney regarding Stealth case and scheduling order" and a June 5, 2015 entry in which Shiells billed 1.6 hours to "[r]evise propose amended pretrial order regarding Brewster case; email same to John Brewster's attorney."

Plaintiff has the burden to establish the number of hours expended through the presentation of adequately recorded time records as evidence. *See Watkins*, 7 F.3d at 457. Plaintiff has not met this burden as to any of the inconsistencies in the available evidence. The Shiells Declaration and Detailed Invoice both purport to account for the time that the Shiells law firm billed litigating this action against the Remaining Defendants up until September 26, 2016 – even if the Detailed Invoice also accounts for work performed after that date.

The undersigned thus concludes that Plaintiff has not provided adequate support for attorneys' fees based on: (a) the hours reflected in the Detailed Invoice but not reflected in the Shiells Declaration; (b) the 4.0 hours that attorney Marcus Benavides billed that is reflected in the Shiells Declaration but not reflected in the Detailed Invoice; and (c) the 2.1 hours that Shiells billed that, according to the Detailed Invoice, Shiells only performed while litigating Plaintiff's case against parties who are not the subject of this motion.

Plaintiff's evidence nevertheless establishes that his legal team billed any hours that remain. This includes the 43.3 hours Shiells that billed in the course of the litigation (based on the 45.4 hours in the Shiells Declaration minus the 2.1 hours Shiells spent only to pursue its claims against Brewster or Stealth), and the 146.3 hours that Chaudhry billed as of the date Plaintiff filed the instant motion.

The Shiells Declaration correctly notes that this Court has already found "Shiells' hourly rate of $385.00 per hour and the firm's paralegal's rate of $100.00 per hour to be 'reasonable and within the market rate for attorneys handling this type of litigation in the Dallas area.'" Dkt. No. 50-1 at 2 (citing Dkt. No. 49 at 10). The undersigned sees no reason to conclude otherwise now.

The undersigned therefore concludes the appropriate lodestar here is calculated as 43.3 hours at $385.00 an hour ($16,670.50) for the work performed by Shiells and 146.3 hours at $100.00 an hour ($14,630.00) for the work performed by Chaudry.

The undersigned has considered the *Johnson* factors but notes that the lodestar is presumed to be reasonable and should only be modified in exceptional cases. Plaintiff

does not seek enhancement of his attorneys' fees. And the undersigned concludes that there are no other circumstances that warrant a change to the lodestar.

The Court should therefore award Plaintiff $31,300.50 ($16,670.50 + $14,630.00) in attorneys' fees.

### Recommendation

The Court should GRANT IN PART and DENY IN PART Plaintiff's Request for Final Judgment as to Damages [Dkt. No. 50] for the reasons and to the extent stated herein. In particular, the Court should GRANT Plaintiff's request for costs in the amount of $600.00 and attorneys' fees in the amount of $31,300.50, and DENY Plaintiff's request for actual damages, enhanced damages, and interest. The Court should also find that Plaintiff's request for injunctive relief is moot since it has already been granted.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific findings or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the

factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: January 30, 2017

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE